SUMMONS ISSUED

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ JUL 1 2 2011 ★

BROOKLYN OFFICE

ROBERT WISNIEWSKI (RW-5308)
ROBERT WISNIEWSKI P.C.
225 Broadway, Suite 1020
New York, New York 10007
(212) 267-2101

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

ANTHONY ARIAS and DAVID SANTANA

                   Plaintiffs,

        -against-

THE WAVECREST MANAGEMENT TEAM LTD.,
CATCH NYC INC., BUSHWICK CATCH HOUSING
DEVELOPMENT FUND COMPANY, INC., CARLTON
COLLIER and CHARLES LYONS

                   Defendants.

-------------------------------------------------------------------X

**Docket No.:**

**CV 11 - 3347**

**JURY TRIAL
DEMANDED**

IRIZARRY, J.

AZRACK, M.J.

## COMPLAINT

1.     Plaintiffs Anthony Arias ("Arias") and David Santana ("Santana"), by their attorneys, Robert Wisniewski P.C., as and for their Complaint against the Defendants, The Wavecrest Management Team Ltd. ("Wavecrest"), Catch NYC Inc. ("Catch"), Bushwick Catch Housing Development Fund Company, Inc. ("Bushwick") (Catch and Bushwick are the "Catch Defendants") (collectively, the "Corporate Defendants"), Carlton Collier ("Collier"), and Charles Lyons ("Lyons") (collectively, the "Individual Defendants"), state as follows:

## NATURE OF THE ACTION

2.     Plaintiffs bring this action to recover unpaid wages, unpaid overtime wages, liquidated damages and reasonable attorneys' fees under the Fair Labor Standards

Act of 1938, as amended (29 U.S.C. § 201, et seq.) ("FLSA"), and the various wage orders promulgated b the U.S. Department of Labor and codified in 29 C.F.R. § 552 et. seq., New York Labor Law Articles 6 and 19, and § 198-b and §193 ("New York Labor Law"), New York state common law and various wage orders promulgated by the New York State Department of Labor and codified in 12 N.Y.C.R.R. §§ 137-143. Plaintiff Arias also brings claims for retaliation under the FLSA, Section §215 and the New York Labor Law §215, as well as for tortious interference with contractual relations against the Catch Defendants and Collier.

3.      Lyons is an officer, shareholder, manager and/or owner of Wavecrest, which provides services in the area of real estate management, supporting and maintaining real estate and providing management, repair and maintenance services to the real estate tenants in the New York City area. Collier is an officer, shareholder, manager and/or owner of the Catch Defendants, which provides community assisted housing for low-income tenants. Plaintiffs have been employed by Wavecrest and the Catch Defendants as superintendents, regularly worked over 40 hours per week, but were not compensated properly for the hours they worked and for the overtime hours.

## PARTIES, JURISDICTION AND VENUE

4.      Plaintiff Arias at all relevant times herein was and is a resident of the State of New York, Kings County. Plaintiff Santana, at all relevant times herein, was and is a resident of the State of New York, New York County.

5.      At all times herein, Wavecrest was and still is a domestic business corporation

duly organized under, and existing by virtue of, the laws of the State of New York, and presently having its principal place of business at: 87-14 116th Street, Richmond Hill, NY 11418.

6.    At all times herein, Catch was and still is a domestic business corporation duly organized under, and existing by virtue of, the laws of the State of New York, and presently having its principal place of business at: 429 Atlantic Avenue, Suite 2A, Freeport, New York, 11520.

7.    At all times herein, Bushwick was and still is a domestic non-for-profit corporation duly organized under, and existing by virtue of, the laws of the State of New York, and presently having its principal place of business at: 121 Sixth Avenue Suite 501, New York, New York, 10013.

8.    At all times herein, the Corporate Defendants transacted and still transact substantial business and derived and still derive substantial revenue from services rendered in the State of New York.

9.    Upon information and belief, Defendant Lyons at all relevant times herein was and is a resident of the State of New York, New York County. Defendant Collier at all relevant times herein was and is a resident of the State of New York, Kings County.

10.    The Individual Defendants are officers, directors, managers and/or majority shareholders or owners of the Wavecrest and the Catch Defendants and, being among the ten largest shareholders, are individually responsible for unpaid wages under the New York Business Corporation Law (See, **Exhibit 1, Exhibit 2**).

11.    This Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. §1331, in that this action arises under 29 U.S.C. § 217 (FLSA); 28 U.S.C. §1337 (Regulation of Commerce). This Court has jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. §1367, because those claims are related to Plaintiffs' federal claims and form part of the same case or controversy.

12. The Defendants engage in an enterprise whose annual volume of sales made or business done is not less than $500,000, the activities of which affect interstate commerce in that the employees of said Defendants handle, sell or otherwise work on goods or materials that have been moved in or produced for interstate commerce, and Defendants are thus employers subject to the jurisdiction of the FLSA.

13. This Court has personal jurisdiction over the Individual Defendants in that they are citizens and residents of the State of New York.

14. This Court is a proper venue for this action, pursuant to, among other grounds, 28 U.S.C. § 1391(b) because events giving rise to Plaintiffs' claims occurred in this district, and because all Defendants may be found within this district.

## JURY DEMAND

15. Plaintiffs demand a trial by jury of all issues so triable in this action.

## FACTUAL BACKGROUND

16. Plaintiffs have been employees of Wavecrest during the six years immediately preceding the initiation of this action and has performed labor and services as a laborer as defined by the FLSA and New York Labor Law and regulations promulgated by the New York State Department of Labor and the U.S.

Department of Labor's Wage and Hour Divisions, but Plaintiffs have not received the compensation required by the FLSA, New York Labor Law or the common law of the State of New York, and the federal and state wage orders codified in 29 C.F.R. § 552 et. seq. and 12 N.Y.C.R.R. §§ 137-143.

17. Wavecrest is a for-profit business entity engaged in the provision of goods and services relating to the management of real estate in the city of New York and its environs.

18. Catch is a for-profit business entity that oversees the restoration of abandoned or dilapidated buildings to convert them to low-cost housing in the New York City area.

19. Bushwick is a not-for-profit business entity that oversees the restoration of abandoned or dilapidated buildings to convert them to low-cost housing in the New York City area.

20. Plaintiff Arias was employed by Wavecrest as a superintendent at the building located at 1028 Bushwick Ave., Brooklyn, NY 11221 (the "building") from approximately July 1, 2009 through October 20, 2010.

21. Plaintiff Santana was employed by Wavecrest as a temporary replacement as superintendent on the same building while Plaintiff Arias was on vacation from approximately mid-July 2009 through the middle of August, 2010.

22. The Catch Defendants were the developers of the building and had hired Wavecrest to manage it.

23. At all times herein, Collier was and still is the owner, director, officer, manager, employee and/or agent of the Catch Defendants and has

exercised operational control over the Catch Defendants.

24.     At all times herein, Lyons was and still is the owner, director, officer, manager, employee and/or agent of Wavecrest and has exercised operational control over Wavecrest.

25.     At all times herein, Collier has conducted business as the Catch Defendants.

26.     At all times herein, Lyons has conducted business as Wavecrest.

27.     At all times relevant herein, Collier has acted for and on behalf of the Catch Defendants, with the power and authority vested in him as an officer, agent and employee of the Catch Defendants, and has acted in the course and scope of his duty and function as an agent, employee and officer of the Catch Defendants.

28.     At all times relevant herein, Lyons has acted for and on behalf of Wavecrest, with the power and authority vested in him as an officer, agent and employee of Wavecrest, and has acted in the course and scope of his duty and function as an agent, employee and officer of Wavecrest.

29.     At all times herein, upon information and belief, Collier used the Catch Defendants in order to perpetuate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose.

30.     At all times herein, upon information and belief, Lyons used Wavecrest in order to perpetuate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose.

31.     Upon information and belief, in conducting the affairs of the Catch Defendants, Collier failed to comply with the corporate formalities, usurped assets of the Catch Defendants for personal use, and commingled his personal assets with the

assets of the Catch Defendants.

32.     Upon information and belief, in conducting the affairs of Wavecrest, Lyons failed

to comply with the corporate formalities, usurped assets of Wavecrest for personal

use, and commingled his personal assets with the assets of Wavecrest.

33.     Upon information and belief, Wavecrest is the alter ego of Lyons, and as will be

established at trial, for the purpose of the claims made by Plaintiffs herein,

Wavecrest has no separate legal existence from Lyons, and, as a result, Wavecrest

and Lyons, individually and collectively, and jointly and severally, are liable for

all claims made herein.

34.     Upon information and belief, the Catch Defendants are the alter egos of Collier,

and as will be established at trial, for the purpose of the claims made by Plaintiffs

herein, the Catch Defendants have no separate legal existence from Collier, and,

as a result, the Catch Defendants and Collier, individually and collectively, and

jointly and severally, are liable for all claims made herein.

35.     At all times relevant herein, Lyons has directly managed, handled, or been

responsible for, the payroll and/or payroll calculations and signing or issuing

checks for the Plaintiffs and, by virtue of his position with Wavecrest, has been

responsible for the proper management and handling of the payroll and payroll

calculations for Wavecrest.

36.     Upon information and belief, the Catch Defendants are alter egos of each other,

and as will be established at trial, for the purpose of the claims made by Plaintiffs

herein, the Catch Defendants have no separate legal existence from each other,

and, as a result, the Catch Defendants, individually and collectively, and jointly

and severally, are liable for all claims made herein.

37.   Lyons was and is Wavecrest's Senior Assistant Manager and had the authority to hire and fire Plaintiffs, set their rate of pay. He also oversaw Plaintiffs' work and maintained employee records.

38.   Collier is the Executive Director of the Catch Defendants and frequently communicated with Plaintiffs, especially Arias, regarding their work.

39.   Collier, acting on behalf of the Catch Defendants, oversaw Plaintiffs' work and had the authority to hire and fire Plaintiffs.

40.   As such, Collier and Lyons had control over the conditions of Plaintiffs' employment, their work schedule, the rates and methods of payment of their wages and/or maintenance of their employment records.

41.   The Individual Defendants had control over the conditions of Plaintiffs' employment, their work schedule, the rates and methods of payment of their wages and the maintenance of their employment records.

42.   As a matter of economic reality, all Defendants are joint employers of Plaintiffs and, as a result, all Defendants, individually and collectively, and jointly and severally, are liable for all claims made herein.

### *Defendants' Violations of the Wage Laws*

43.   Plaintiffs regularly worked at least 40 hours per week but were not paid for all the time they worked for Defendants.

44.   Plaintiffs worked in excess of 40 hours per week but were not paid the proper overtime rate under Federal and New York State law.

45.   Plaintiffs were persons covered by, and/or intended to benefit from, the provisions

of the Fair Labor Standards Act, New York Labor Law, the common law of the

State of New York, and the federal and state wage orders codified in 29 C.F.R. §

552 et. seq. and 12 N.Y.C.R.R. §§ 137-143 in respect to their work for Defendants

and were therefore due proper wages for all hours worked including overtime.

46.   Prior to beginning his employment as superintendent at the building, Plaintiff

Arias signed a contract with Wavecrest.

47.   Arias' contract required him to work from 8:00 am until 4:00 pm from Monday to

Friday. The contract called for Arias to receive $32,000.00 annually. The contract

also designated Arias' work hours as 8:00 am to 4:00 pm, Monday through

Friday. (**Exhibit 3**, at ¶¶3,5)

48.   Aside from these hours, the contract also required that Arias be "on call" for

emergencies on a 24-hour basis, 7 days a week, and stated that he would only be

paid for emergency work performed when he was off duty if that work took longer

than 30 minutes to complete.(**Exhibit 3**, at ¶5).

49.   In reality, Arias was never paid for any emergency work he performed no matter

how long the duration.

50.   In and about July 2010, the Catch Defendants hired R'US Construction (the

"Contractor") to perform restoration work on the building.

51.   The Contractor performed work on the building on their own schedule, which was

often not during Arias' work hours.

52.   As a result, Arias had to work an additional 4 hours a week to accommodate the

Contractor, for which he was not compensated.

53.   Shortly after the Contractor began work, Arias went on vacation for 3 weeks and

Santana replaced him as the superintendent during Arias' vacation.

54.     Although Santana did not sign a contract, he understood that he would work the same hours as Arias and would receive the same compensation and benefits.

55.     Like Arias, however, Santana worked 44 hours each week, but was never paid for more than 40 hours a week.

56.     Also like Arias, Santana was also not paid for any emergency work he performed outside of his regular hours.

57.     The various violations of the law which are alleged herein were committed intentionally and/or willfully by the Defendants.

58.     In addition to the added hours that Arias, and during his vacation Santana, had to work, Wavecrest also improperly fired Arias for complaining about not being paid for all of the hours he worked.

59.     Because he was forced to work numerous hours each week for which he was not paid, Arias complained about Defendants' failure to pay him for all hours he worked.

60.     Arias complained that the Contractor's employees often began work before 8:00 am and worked after 4:00 pm, which forced him to work overtime each week.

61.     He also complained that he was not paid for that overtime work or for each and every hour he worked, including the time he worked performing emergency work.

62.     On October 20, 2010, shortly after making these complaint, Lyons fired Arias allegedly for poor job performance.

63.     Aside from these complaint, Arias complained to the Catch Defendants about illegalities regarding the Contractor's work on the building.

64.     As part of the Contractor agreement to renovate the building, they were required
        to properly remove the asbestos that was found in various apartments.

65.     In and around August 2010, when he returned from vacation, Arias complained to
        Collier that the Contractor was not properly removing asbestos from the building,
        which remained occupied at that time, and that its malfeasance posed a serious
        health risk to the safety of Arias and the residents of the building.

66.     Arias also contacted the New York City Department of Environmental Protection
        and the New York City Department of Buildings to complain about the improper
        removal of asbestos in the building.

67.     Arias' complaints to Collier fell on deaf ears and he refused to compel the
        Contractor to properly dispose of the asbestos.

68.     Instead, when he learned that Arias had complained to the DEP and the
        Department of Buildings, Collier began claiming that Arias was unable to perform
        his duties as a superintendent satisfactorily and pressed Lyons to schedule a
        meeting to "discuss" Arias' job performance.

69.     Upon information and belief, Collier put extreme pressure on Lyons and
        Wavecrest, including threatening to terminate the Catch Defendants' relationship
        with Wavecrest, to fire Arias because of his continuous complaints to Collier and
        various government agencies regarding the Contractor's improper disposal of the
        building's asbestos and Wavecrest and the Catch Defendants' refusal to do
        anything about it.

        **Breach of Contract**

70.     Wavecrest also breached their contract with Arias by failing to pay him required

medical benefits.

71.   Pursuant to the contract, in exchange for Arias performing work as a
      superintendent, Wavecrest agreed to pay, among other things, Arias' health
      insurance premiums. (**Exhibit 3** at ¶9).

72.   Arias satisfactorily performed his work, but Wavecrest refused to pay his health
      insurance premiums.

73.   In addition to his work as a superintendent, Arias entered separate contracts with
      Wavecrest to perform improvements on the building, including renovating,
      remodeling and painting various apartments and fixing, at his own cost, the
      buildings' boiler. (**Exhibit 4**).

74.   Specifically, but not exclusively, Arias entered into contracts on November 23,
      2009, January 10, 2010, and July 13, 2010 to perform work.

75.   In exchange for Arias' performing this work, Wavecrest agreed to pay him a
      contractually-agreed upon amount.

76.   Arias satisfactorily performed the work required under these contracts, but
      Wavecrest refused to compensate him for the work he performed.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract by Plaintiffs against Wavecrest)**

77.   Plaintiffs repeat and reallege each and every allegation as previously set forth.

78.   Plaintiffs agreed to perform work and services for Wavecrest.

79.   Arias had a written contract with Wavecrest to perform work as a superintendent
      on the building in exchange for compensation in the form of an hourly wage
      equaling $16.6345 for each hour worked.

80.    In addition, the written contract required that Wavecrest pay Arias' health insurance premiums.

81.    Santana had an oral contract with Wavecrest to perform work as a superintendent on the building in exchange for compensation in the form of an hourly wage equaling $16.6345 for each hour worked.

82.    Plaintiffs satisfactorily complied with the terms of their employment agreements with Wavecrest and were therefore entitled to the proper hourly rate for all hours worked they rightfully earned while working for Wavecrest.

83.    By not providing Plaintiffs with an hourly wage for each hour worked, Wavecrest failed or refused to pay Plaintiffs the hourly wage to which they were entitled under their respective employment agreements with Wavecrest.

84.    The Wavecrest's failure or refusal to pay Plaintiffs the hourly rate for each hour worked to which they were entitled under their respective employment agreements constitutes a breach of Plaintiffs' employment agreements with Wavecrest.

85.    Specifically, Wavecrest's failure or refusal to pay Plaintiffs the hourly wage for each hour worked to which they were entitled under their respective employment agreements with Wavecrst breached the clause requiring that Defendants pay Plaintiffs a specific hourly wage for each hour worked.

86.    In addition to the above breaches for failure to pay proper wages, although required to do so by its written agreement with Arias, Wavecrest failed to pay Arias' health insurance premiums.

87.    Wavecrest also entered into an agreement to pay Arias for work he performed outside of the scope of his duties as superintendent.

88. Arias performed the work as required by the contracts.

89. Wavecrest, however, failed to pay Arias for that work.

90. By failing to pay Arias for that work, they breached their contract with Arias.

91. That by virtue of the foregoing breach of contract by Wavecrest, Plaintiffs have been damaged in an amount to be proven at trial based upon an accounting of the amount Plaintiffs should have been paid as contemplated by their respective employment agreements with Wavecrest, less amounts actually paid to Plaintiffs, together with an award of interest, costs, disbursements, and attorneys' fees.

### SECOND CLAIM FOR RELIEF
### (Quantum Meruit by Plaintiffs against all Defendants)

92. Plaintiffs repeat and reallege each and every allegation previously set forth.

93. Plaintiffs performed work and services as superintendents for Defendants.

94. Plaintiffs had a reasonable expectation of payment for the hours they worked for Defendants, but Defendants failed to remunerate Plaintiffs for all the hours they worked.

95. Plaintiffs were entitled to payment for the unpaid hours they worked for Defendants at a rate which constitutes the reasonable value of their services, less amounts actually paid to Plaintiffs, together with an award of interest, costs, disbursements, and attorneys' fees.

### THIRD CLAIM FOR RELIEF
### (New York Labor Law by Plaintiffs against all Defendants)

96. Plaintiffs repeat and reallege each and every allegation previously set forth.

97. Pursuant to the New York Labor Law Articles 6 and 19, §193 and §198, and the

Wage Orders issued under the New York Labor Law at 12 N.Y.C.R.R. §§ 137-143, Plaintiffs were entitled to certain hourly minimum wages, overtime wages, and other wages, all of which the Defendants intentionally failed to pay in violation of such laws.

98.     Wherefore Plaintiffs seek a judgment against all Defendants for all wages which should have been paid, but were not paid,  pursuant to the New York Labor Law and the Wage Orders issued thereunder and the other provisions of New York Labor Law; the total amount of such unpaid wages to be determined at trial upon an accounting of the hours worked by, and wages paid to Plaintiffs, along with an award of attorneys' fees, interest and costs as provided under the New York Labor Law § 198 and §663.

## FOURTH CLAIM FOR RELIEF
### (FLSA by Plaintiffs against all Defendants)

99.     Plaintiffs repeat and reallege each and every allegation previously set forth.

100.    Plaintiffs bring this claim for relief pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 206 and § 207, and the Wage Orders issued under the FLSA at 29 C.F.R. § 552, under which Plaintiffs were entitled to a minimum wage and an overtime hourly wage of time and one-half their regular hourly wage for all hours worked in excess of forty (40) hours per week.

101.    Plaintiffs worked more than forty (40) hours per week for Defendants, and Defendants willfully failed to make said minimum wage and/or overtime payments for each hour worked.

102.    Plaintiff Arias regularly complained to Defendants Collier and Lyons about not

being paid properly for all hours worked.

103.    Plaintiffs seek a judgment for unpaid overtime wages, such sums to be determined
based upon an accounting of the hours worked by, and wages actually paid to,
Plaintiffs, plus an award of liquidated damages, attorneys' fees, interest and costs
as provided for by the FLSA.

**FIFTH CLAIM FOR RELIEF**
**(New York Labor Law Retaliation by Arias against all Defendants)**

104.    Arias repeats and realleges each and every allegation previously set forth.

105.    In committing the above-mentioned retaliatory acts, Defendants have discharged,
penalized and discriminated against Arias because Arias made a complaint against
Defendants alleging Defendants had violated the provisions of the New York
Labor Law §215 and Arias has been damaged therefrom.

106.    Arias seeks, on this claim for relief, reinstatement to his former position, payment
of lost compensation, damages and reasonable attorneys' fees and costs.

**SIXTH CLAIM FOR RELIEF**
**(FLSA Retaliation by Arias against all Defendants)**

107.    Arias repeats and realleges each and every allegation previously set forth herein.

108.    In committing the above mentioned retaliatory acts, Defendants have discharged,
penalized and discriminated Arias because Arias made a complaint against
Defendants alleging Defendants had violated the provisions of the FLSA in
violation of FLSA § 215 (a)(3) and Arias has been damaged therefrom.

109.    Arias seeks, on this claim for relief, reinstatement to his former position, payment
of lost compensation, damages and reasonable attorneys' fees and costs.

## SEVENTH CLAIM FOR RELIEF
### (Tortious Interference with Contract by Arias against the Catch Defendants and Collier)

110.   Arias repeats and realleges each and every allegation previously set forth herein.

111.   Arias had a valid contract with Wavecrest to perform work as a superintendent at the building.

112.   Collier and the Catch Defendants, who were the developer of the building, were aware of the existence of this contract between Wavecrest and Arias.

113.   As part of his job as superintendent at the building, Arias had a responsibility to ensure the well-being of the residents of the building.

114.   In fulfilling those duties, Arias complained to Collier, as well as various governmental agencies, about the Contractor's improper disposal of the building's asbestos.

115.   In retaliation of these complaints, Collier put extreme pressure on Lyons and Wavecrest, which included, upon information and belief, the threat to end their business relationship unless Wavecrest terminated Arias.

116.   In response to Collier's pressure, Wavecrest terminated Arias' contract.

117.   Arias seeks, on this claim for relief, payment of lost compensation, damages and reasonable attorneys' fees and costs.

[no more text on this page]

WHEREFORE, it is respectfully requested that the Court assume jurisdiction herein and thereafter Plaintiffs demands a trial by jury and judgment against Defendants as follows:

1. Compensatory damages in an amount to be determined at trial;

2. Liquidated damages pursuant to FLSA and New York Labor Law;

3. Plaintiffs' costs and reasonable attorney's fees; and

4. Pre-judgment interest.

5. Back pay and front pay, and all benefits to which Plaintiff Arias was entitled; and

6. Reinstatement of Plaintiff Arias to his former position;

   Together with such other and further relief that the Court deems just.

Dated: New York, NY
     June 23, 2011

ROBERT WISNIEWSKI P.C.

By: _____

     Robert Wisniewski (RW-5308)
Attorneys for Plaintiffs
225 Broadway, Suite 1020
New York, New York 10007
(212) 267-2101

**EXHIBIT 1**

## NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY FOR SERVICES RENDERED

TO:    CHARLES LYONS

PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that ANTHONY ARIAS and DAVID SANTANA intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of THE WAVECREST MANAGEMENT TEAM for all debts, wages and/or salaries due and owing to them as laborers, servants and/or employees of the said corporation for services performed by them for the said corporation within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.


Dated: New York, New York
       June 23, 2011


ROBERT WISNIEWSKI P.C.

By: _____
      Robert Wisniewski (RW-5308)
Attorneys for Plaintiffs
225 Broadway, Suite 1020
New York, New York 10007
(212) 267-2101

## NOTICE OF INTENTION TO ENFORCE SHAREHOLDER
## LIABILITY FOR SERVICES RENDERED

TO:   CARLTON COLLIER

PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that ANTHONY ARIAS and DAVID SANTANA intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of CATCH NYC INC. for all debts, wages and/or salaries due and owing to them as laborers, servants and/or employees of the said corporation for services performed by them for the said corporation within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

Dated: New York, New York
      June 23, 2011

ROBERT WISNIEWSKI P.C.

By: _____

    Robert Wisniewski (RW-5308)
Attorneys for Plaintiffs
225 Broadway, Suite 1020
New York, New York 10007
(212) 267-2101

**EXHIBIT 2**

**DEMAND BY EMPLOYEES TO INSPECT SHARE RECORDS AND MINUTES
PURSUANT TO SECTION 624 OF THE NEW YORK STATE BUSINESS
CORPORATION LAW**

TO:

      The Wavecrest Management Team Ltd.
      87-14 116th Street
      Richmond, Hill, NY 11418

      Catch NYC Inc.
      429 Atlantic Avenue, Suite 2A
      Freeport, NY 11520

      PLEASE TAKE NOTICE, that ANTHONY ARIAS and DAVID SANTANA  as employees of the above corporation who intend to demand, pursuant to the provisions of Section 630 of the Business Corporation Law of New York, payment of debts, wages and/or salaries due and owing to them as laborers, servants and/or employees of the above corporation for services performed by them for the above corporation within the six (6) years preceding the date of this notice from the ten largest shareholders of the above corporation, and who have expressly authorized the undersigned, as their attorney, to make this demand on their behalf,

      HEREBY DEMAND the right to examine, in person or by agent or attorney, during usual business hours, the minutes of the proceedings of the shareholders and record of shareholders of the above corporation and to make extracts therefrom on or after five (5) days from receipt of this notice.

      Dated: New York, New York
            June 23, 2011

                    ROBERT WISNIEWSKI P.C.

                    By: _____
                      Robert Wisniewski (RW-5308)
                    Attorneys for Plaintiffs
                    225 Broadway, Suite 1020
                    New York, New York 10007
                    (212) 267-2101

**EXHIBIT 3**

**AGREEMENT**

This agreement is dated as of August 6, 2009, by and between Anthony Arias and 1028 Bushwick Avenue, Brooklyn ("the Superintendent"). The parties wish to set forth clearly the teams and condition of the employment relationship; and therefore mutually agreed to as follows:

1. The superintendent will be employed by the company as Superintendent of the building located at 1028 Bushwick Avenue, Brooklyn, NY ("the building") as of July 1, 2009.
2. It is expressly understood that this employment agreement is for no set time or term and that the Superintendent is an employee at will. The services of the Superintendent are terminable by the Company immediately for cause, or upon 60days' written notice by the company. The Superintendent is free to resign his employment with the company on 60' written notice. Nothing in this agreement may or will be construed as a guarantee of employment or tenure with the Company.
3. Salary: The Superintendent's gross salary will be $32,000 yearly(less lawful deduction) commencing on the effective date of the Superintendent's employment. In addition, the Company will pay the Superintendent lights and supply a cell phone/radio.
4. Salary Adjustment: The Superintendent's job performance will be evaluated at the end of each calendar year by the Company. Any salary adjustment will be determined and adjusted accordingly based on the Company's Evaluation of the Superintendent's performance.
5. Hours: The Superintender's regular work hours will be 40 hours per week between 8am and 4pm Monday through Friday. In addition, the Superintendent is expected to be available to respond to emergencies at the Building on a 24-hour basis. The Superintendent will not receive any additional compensation for any such emergency services except the superintendent may receive compensatory time for any period longer than 30 minutes.
6. Holidays: the Superintendent is entitled to the following holidays:

New Years Day

Presidents Day

Memorial Day

Labor Day

Thanksgiving Day

Christmas Day

7. Vacation: After one (1) year of service, the Superintendent will be entitled to two (2) weeks vacation with pay at time and dates to be mutually agreed upon between the Superintendent and the Company, Unused vacation cannot be carried over.

8. Personal Benefits: The Superintendent is entitled to 2 days of paid personal leave per year taken in single days and 5 single days of paid sick leave per year taken in single days. Unused sick and personal days cannot be carried over.

9. Health Benefits: Company will provide health insurance for the superintendent on such terms and condition as may be determined by company from time to time. In the event that the Superintendent requests family coverage, he will be required to pay the difference between the coverage's.

10. During the entire period that this agreement is in effect the Superintendent agrees not to engage in any outside employment, during his working hours, whether with the building or outside.

11. Because the Superintendent shall in the course of his employment be privy to information which is proprietary and /or confidential in nature, the parties hereby understand and agree that following any departure from employment by the Superintendent for any reason, voluntary or involuntary, the Superintendent hereby agrees not to divulge any proprietary or confidential information about the Company, residents and tenants which has been entrusted to him or of which he has become aware.

12. In the event the Superintendent is either terminated or resigns, he will vacate and cause all members of his family to vacate, the apartment which he occupies no later than 30 days from the date of notice of either (a) termination or (b) resignation. The apartment will be left in good order and in broom swept condition. The Superintendent understands and agrees that in consideration for this agreement he waives any defenses in any proceeding commenced by the

company to terminate the Superintendent's occupancy of the apartment during the term of or at the termination of the employment contract and will consent to such proceedings as the Company may commence.

13. If the superintendent's employment is terminated for any reason except for having committed a crime or having breached his fiduciary duty to the company, but including his resignation, the Superintendent will revive accrued unused pro rate vacation, sick and personal days.  Such payment, however, will be paid to the Superintendent only if he vacates the Apartment in accordance with Para. 12 of this agreement and executes a full and complete general release.

14. This agreement constitutes the full and complete understanding of the parties and may not be modified orally.  This agreement is subject to New York Law.

15. All notices required  to be given hereunder shall be in writing given to either party at the following addresses:

**Superintendent**:        Anthony Arias


1028 Bushwick Avenue/ Neighborhood Restore

C/o Wavecrest management Team LTd

87-14 116th Street

Richmond Hill, NY 11418

16. Nothing in this agreement shall be contracted to constitute a guarantee of employment and it is expressly understood and agreed that this employment is terminable at will by either party.

Date:_____

_____              _____

Superintendent                                                            Property Manager

**EXHIBIT 4**

Anthony Arias
1028 Bushwick Ave Apt 1A
Brooklyn NY, 11221

Customer:
Wavecrest Management Team,LTD
1408 Bushwick Ave
Brooklyn NY,11221

January 10, 2010

## Custom Labor Costs:

| | |
|---|---|
| First visit to Boiler.  Oil tank left empty. Signed off on oil delivery.  Had to bleed Boiler, clean Oil filters, conduct a blow down and reset boiler. | $225.00 |
| Fixed circuit breaker box socket and replaced fuse for apt 1-LL half the house with no electricity. | $145.00 |
| Replaced ball inside gas shut off valve because apartment did not have gas getting through Apt 1-LL. | $90.00 |
| Replaced hot water handle / watcher for shower body leaking For Apt 4-R. | $110.00 |
| Unclogged bathroom sink for Apt 4-R. | $45.00 |
| Fixed mortise / handle was getting stock trouble opening. Apt 4-R | $50.00 |
| Second visit to Boiler.  Oil tank left empty. Signed off on oil delivery.  Had to bleed Boiler, clean Oil filters, conduct a blow down and reset boiler. | $225.00 |

*Any dispute or difference arising out of or in connection with this contract shall be determined by the appointment of a single arbitrator to be agreed between the parties, or failing agreement within fourteen days, after either party has given to the other a written request to concur in the appointment of an arbitrator, by an arbitrator to be appointed by the President or a Vice President of the Chartered Institute of Arbitrators.*

**Total for labor:**        $ $890.00

2

**Anthony Arias**
**1028 Bushwick Ave Apt 1A**
**Brooklyn NY , 11221**

Customer:
Wavecrest Management Team, LTD
1408 Bushwick Ave
Brooklyn NY, 11221

July 13, 2010

**Custom labor and materials cost:**

| Remaining balance. | $450.00 | |
|---|---|---|

Any dispute or difference arising out of or in connection with this contract shall be determined by the appointment of a single arbitrator to be agreed between the parties, or failing agreement within fourteen days, after either party has given to the other a written request to concur in the appointment of an arbitrator to be appointed by the President or Vice President of the Chartered Institute of Arbitrators.

**Total for labor and materials:**     $450.00

# Invoice

Anthony Arias
1028 Bushwick Ave. #1A
Brooklyn, NY 11221

Invoice Date:
November 23, 2009

Invoice To:                                          Invoice Number:  0001
Wavecrest Management

| Item Number | Description | Quantity | Price |
|---|---|---|---|
| 1 | Paint entire apartment #6B | 1 | $400.00 |
| 2 | Refinish Bath Tub | 1 | $100.00 |
| 3 | Refinish Bath Sink | 1 | $75.00 |
| 4 | Install new vinyl floor in kitchen | 1 | $200.00 |
| 5 | Replaced photocell in light fixture outside of building | 1 | $75.00 |
| 6 | Replace light fixture in staircase from 1st to 2nd floor and 5th floor.  Replaced light fixture outside of building | 3 | $180.00 |

Total Due Now:1,030.00

$